UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HAILEE R. DeSOUZA,  :
    Plaintiff  :
     :
v.  :
   :
LEANNE KENNEDY,  :  No. 3:16-cv-01126
   :
    Defendant.  :

## RULING ON MOTION TO DISMISS

Alleging wrongdoing in connection with his state court eviction settlement, *pro se* Plaintiff Hailee DeSouza sues Leanne Kennedy, a mediator for the State of Connecticut Housing Court in both her official and individual capacities for alleged deprivation of his civil and constitutional rights. Specifically, he claims (i) violations of the First, Fifth, Sixth, and Fourteenth Amendments (count one) (ECF No. 22 at 12-13), (ii) violations of Title VI of the Civil Rights of 1964, 42 U.S.C. § 2000d (count two) (*Id*. at 13-14), (iii) conspiracy to interfere with his civil rights in violation of 42 U.S.C. § 1985(2)(3) (*Id*. at 14) (count three) (*Id*. at 14), (iv) denial of equal protection under the law in violation of 42 U.S.C. § 1981 (count four) (*Id*. at 15), (v) racial discrimination in violation of 42 U.S.C. § 2000a-2 (count five) (*Id*. at 15-16), (vi) interference, coercion or intimidation in violation of the Fair Housing Act (the "FHA"), 42 U.S.C. § 3617 (count six) (*Id*. at 16), (vii) interference with his rights under the FHA in violation of 42 U.S.C. § 3631 (count seven) (*Id*. at 17), and (viii) conspiracy to violate his rights in violation of 18 U.S.C. § 241 (count eight) (*Id*. at 17-18).

Defendant has moved to dismiss Plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. As more fully explained below, I grant the motion to dismiss because I find: (i) Plaintiff's claims in counts one, three, four, five, and six against

Defendant in her official capacity are barred by the Eleventh Amendment, and (ii) Plaintiff's claims in counts one, three, four, five and six against Defendant in her individual capacity are barred by quasi-judicial immunity. Each count in Plaintiff's complaint also fails to state a claim.

I. **Factual Background**

Plaintiff is a resident of Park West Apartments, Inc. ("Park West"), a "[m]ultifamily [h]ousing [c]ommunity located in Vernon, CT." (ECF No. 22 at 2.) Beginning in 2014, Park West commenced an eviction action against Plaintiff in the Connecticut Superior Court. (*Id*. at 4) On August 29, 2014, at the Rockville-Vernon Superior Court in Vernon, Park West and Plaintiff appeared before the Defendant, a housing mediator, in a mediation to resolve Park West's eviction action against Plaintiff. (*Id*. at 4-7.) Both parties in the eviction action were represented by counsel. (*Id*. at 4.) According to the Plaintiff, the Defendant coerced him into signing a stipulation in the eviction case by (i) falsely alleging that a judge had ordered Plaintiff to do so, (*Id*. at 5,11), (ii) misrepresenting the judge's availability to adjudicate the case, (*Id*.), and (iii) employing fraud and intimidation. (*Id*. at 9.) After he allegedly signed the stipulation against his will, Plaintiff claims Park West had an advantage in later proceedings in the eviction action. (*Id*. at 9.) Furthermore, on account of Defendant's actions, Plaintiff alleges he was forced to participate in those subsequent court proceedings. (*Id*. at 10.) Finally, as a result of Defendant's actions, Plaintiff alleges that he suffered emotional distress, stress, anxiety, loss of sleep, extreme heartburn, ulcers, mental anguish, various heart issues, and that he required "various treatments with drugs and medications." (*Id*. at 13.)

II. **Legal Standards**

A. **Rule 12(b)(1)**

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v.*

*Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckkett v. Bure*, 290 F.3d 493, 497 (2d. Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court construes the complaint liberally and accepts all factual allegations as true. *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

### B. Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), a court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A court may allow a case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55). When a plaintiff submits a complaint *pro se*, the court must construe the allegations liberally, raising "the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d. 636, 639 (2d Cir 2007). A *pro se* plaintiff, however, still must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F. 3d 509, 515 (2d Cir. 2013)("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

## III. Discussion

### A. Standing

Defendant argues that Plaintiff lacks standing because he has not suffered an injury. "Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit. The requirements for a plaintiff to establish standing are well-settled: first, plaintiffs must show that they have suffered an injury in fact that is both concrete in nature and particularized to them. Second, the injury must be fairly traceable to defendants' conduct. Third, the injury must be redressable by removal of defendants' conduct." *Kalson v. U.S.*, 159 Fed. Appx. 326, 327 (2d Cir. 2005). "To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized,' as well as 'actual or imminent, not conjectural or hypothetical.'" *Student Members of Same v. Rumsfeld*, 321 F. Supp. 2d 388, 393 (D. Conn. 2004)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). When standing is raised at the pleading stage "all facts averred by the plaintiffs must be taken as true for purposes of the standing inquiry, just as for any other issue presented. . . . As a result, general factual allegations of injury resulting from the statute and conduct challenged may suffice to establish the plaintiff's standing." *Id.*

Plaintiff has pled enough facts to suggest that he has been injured by Defendant's conduct and thus that he has standing. According to Plaintiff, Defendant's alleged coercion, misrepresentation, intimidation, and racially-motivated discrimination resulted, among other things, in various types of emotional distress. Although the allegations of emotional distress are somewhat vague, I find, drawing all reasonable inferences in Plaintiff's favor, that they are sufficient to satisfy the Article III requisite for standing.

### B. Official Capacity Claims

1. The Eleventh Amendment Bar (Counts 1, 3-6)

Plaintiff's claims in counts one, three, four, five, and six for money damages brought, respectively, under 42 U.S.C §§ 1983, 1985(2)(3), 1981, 2000a-2, and 3617 against Defendant in her official capacity are barred by the Eleventh Amendment. The Eleventh Amendment bars this Court from exercising jurisdiction over suits against States seeking money damages, absent consent by the State or Congressional abrogation of Eleventh Amendment immunity. *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001)("[The Eleventh] Amendment bars suits that seek [] money damages…"); *see also Colapietro v. Dep't of Motor Vehicles*, No. 3:08-CV-00238, 2008 WL 4298374, at *2 (D. Conn. Sept. 17, 2008)("[A] suit for recovery of money damages may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment."); *Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993)(The Eleventh Amendment "affects [court's] subject matter jurisdiction."). A suit against an individual in her official capacity is for Eleventh Amendment purposes a suit against the state. *Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . ."). Congress did not abrogate Eleventh Amendment immunity in enacting any of the statutes Plaintiff relies upon in counts one, three, four, five, and six. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69 (1989)(observing Congress did not abrogate Eleventh immunity in enacting section 1983); *O'Diah v. New York City*, No. 02-CIV.-274 (DLC), 2002 WL 1941179, at *6 (S.D.N.Y. Aug. 21, 2002)("[Plaintiff's] Section 1985 conspiracy claims against the New York State defendants must be dismissed because it is well settled that a state and its agencies are not persons under . . . Section 1985.")(internal quotation marks, citations,

and alterations omitted); *Chinn v. CUNY Sch. of L. at Queens C.*, 963 F. Supp. 218, 224 (E.D.N.Y. 1997)(holding in a § 1981 suit that "the Eleventh Amendment bar applies when State officials are sued for damages in their official capacities.")(internal quotation marks and citations omitted); *Pinzon v. California*, No. 14-cv-05504-JST, 2016 WL 947522, at *2 (N.D.Ca. 2016)(dismissing Plaintiff's 42 U.S.C. § 2000a-2 claims because Congress has not abrogated immunity under Title II of the Civil Rights Act, 42 U.S.C. §2000a-2)(internal quotation marks and citations omitted); *Sierotowicz v. State of New York Div. of Hous. and Community Renewal*, 04-CV-3886NGGLB, 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005)(" Courts have similarly rejected the contention that the FHA abrogates sovereign immunity."). And the State of Connecticut did not consent to be sued on any of those claims. Thus, Plaintiff's claims in counts one, three, four, five and six against Defendant in her official capacity are dismissed on Eleventh Amendment grounds.[1]

2. Title VI Claim, 42 U.S.C. § 2000d (Count Two)

Plaintiff's claim that Defendant is liable in her official capacity for violating 42 U.S.C. § 2000d is not barred by the Eleventh Amendment because "a State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title VI of the Civil Rights Act of 1964 . . . ." 42 U.S.C. § 2000d-7(a)(1) (2017).

---

[1] To the extent that Plaintiff seeks prospective relief, (ECF No. 22 at 18), Plaintiff has failed to plausibly allege a continuing violation of federal law. *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 73 (1996)(observing that Eleventh Amendment does not bar a "suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law."). Nothing in the complaint suggests that Plaintiff will encounter the Defendant again at a Housing Court proceeding. Also, a search of the Connecticut Superior Court's electronic housing docket revealed no open cases in which Mr. DeSouza is a party. State of Connecticut Judicial Branch, Civil/Family/Housing Inquiry. Party Name Search: http://civilinquiry.jud.ct.gov/PartySearch.aspx. Searched DeSouza, Hailee as of August 7, 2017. Therefore, any claim for prospective relief must fail.

Although this claim passes the initial jurisdictional bar of the Eleventh Amendment, it fails to state a claim under 42 U.S.C. § 2000d-7. "To plead a claim under Title VI of the Civil Right Act of 1964, a plaintiff must allege that he or she, 'on the ground of race, color, or national origin, was excluded from participation in, was denied the benefits of, or was subjected to discrimination under any program or activity receiving Federal financial assistance.'" *James v. Am. Airlines, Inc.*, No. 16-cv-674 (PKC), 2017 WL 1208429, at *7 (E.D.N.Y. Mar. 31, 2017)(*citing* 42 U.S.C. § 2000d). To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must make a plausible claim that Defendant denied him benefits or discriminated against him under a program receiving Federal funds because of his race, color, or national origin. 42 U.S.C. § 2000d.

Plaintiff fails to state a claim under 42 U.S.C. § 2000d-7 because he does not provide any facts to support allegations of discrimination on the basis of race, color, or national origin[2], and

---

[2] Although not directly addressed by Defendant in her brief, I note that this same flaw – the absence of any factual allegations suggesting that Defendant acted "because of" Plaintiff's race, color, or national origin – is fatal to several other claims here. *Gen. Bldg. Contractors Ass'n, Inc. v. Pa.*, 102 S.Ct. 3141, 3149-50 (1982)(Section 1981 claim and Section 1983 equal protection claim require proof of discriminatory intent); *Ford v. Moore*, 237 F.3d 156, 162 n.3 (2d Cir. 2001)(plaintiff's § 1985(3) conspiracy claim failed "for lack of any evidence of the requisite discriminatory intent.") Plaintiff has also failed to plead other essential facts to support his other claims. Regarding Count One (*See* 42 U.S.C. § 1983)(Requiring proof of deprivation of "any rights, privileges, or immunities secured by the Constitution and laws . . . ."), Plaintiff fails to plead any facts to support the allegation that his First Amendment freedom or his Fifth Amendment right to due process or freedom from self-incrimination has been abridged. The Sixth Amendment, which he also invokes, is not applicable to this civil matter. His Fourteenth Amendment claim is, as noted, unsupported by any factual allegations suggesting racial animus or any factual allegations that he has been deprived of a property interest. Regarding his 42 U.S.C. § 1985(2) and (3) claim, Plaintiff fails to plead any facts demonstrating a conspiracy to deter him, by force or threat from engaging the legal system or denying him equal protection of the laws. Regarding his 42 U.S.C § 1981 claims, Plaintiff fails to plead any facts to suggest that he has been denied the equal benefit and protection of all laws as enjoyed by white citizens. He has also failed to plead any facts supporting his claim that he was intimidated, threatened, or coerced for the purpose of interfering with his right to be free from racial discrimination or his right to equal access to public accommodations, in violation of 42 U.S.C. § 2000a-2. And,

7

because he does not allege any facts to support allegations that he was denied benefits or discriminated against under a program receiving federal funds. Plaintiff makes the conclusory allegation that Defendant, "with oppressed racial motives, grossly discriminated against me because of race, skin color, ethnicity and as minority litigant" but provides no factual support for these racial discrimination claims. (ECF No 22. at 13-14.) *See Clyburn v. Shields*, 33 Fed. Appx. 552, 555 (2d Cir. 2002)("Title VI . . . require[s] that intentional discrimination be alleged in a non-conclusory fashion.") Similarly, Plaintiff has failed to plead facts suggesting that any discrimination occurred under any program or activity receiving Federal financial assistance or that the Defendant is associated with any such program or activity. *See McCrudden v. E-Trade Fin. Corp.*, 13 Civ. 8837, 2014 WL 3952903, at *4 (S.D.N.Y. Aug. 12, 2014)(dismissing Title VI claim where complaint failed to allege requisite nexus between federal assistance and alleged discrimination.) Finally, Plaintiff's claim against the Defendant in her individual capacity in count two fails because "Title VI does not provide for individual liability, only liability against entities that receive federal financial assistance." *Bossie v. Houle*, 2011 WL 4435699, at *2 (D. Conn. Sept. 23, 2011)(citing cases). Even construing the *pro se* Plaintiff's allegations liberally, I find that they fail to state a facially plausible claim under 42 U.S.C. § 2000 *et seq.*

---

regarding his 42 U.S.C. § 3617 claim, Plaintiff fails to plead any facts to suggest efforts by Defendant to deprive him of his Fair Housing Rights, nor has he alleged facts showing any connection between Defendant and his landlord. Finally, Plaintiff's counts seven and eight invoke Federal criminal statutes that do not provide a private right of action. *See Hill v. Didio*, 191 Fed. Appx. 13, 14-15 (2d Cir. 2006)("As a general matter, we have long recognized that crimes are prosecuted by the government not by private parties.")

### C. Individual Capacity Claims

   1. Quasi-Judicial Immunity (Counts 1, 3-6)[3]

Defendant contends that the claims against her in her individual capacity are barred by quasi-judicial immunity. "[F]ederal law on quasi-judicial immunity applies to state officials sued in federal court on federal claims." *Gross v. Rell*, 585 F.3d 72, 88 (2d Cir. 2009); *see also Kuck v. Danaher*, 822 F. Supp. 2d 109, 147 (D. Conn Sept. 29, 2011)(observing "quasi-judicial immunity should only extend to claims against defendants sued in their individual and not official capacities.") Quasi-judicial immunity entitles the holder "to absolute immunity for acts taken pursuant to her office." *Finn v. Anderson*, 592 F. App'x 16, 19 (2d. Cir. 2014)(internal quotation marks and citations omitted.) To determine whether quasi-judicial immunity applies, courts consider six factors: (i) "the need to assure that the individual can perform [her] functions without harassment or intimidation;" (ii) "the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;" (iii) "insulation from political influence;" (iv) "the importance of precedent;" (v) "the adversary nature of the process;" and (vi) "the correctability of error on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985)(internal quotation marks and citations omitted); *see also Gross*, 585 F.3d at 80 (noting the "federal test [for quasi-judicial immunity] involves applying the so-called *Cleavinger* factors"). The "immunity analysis is functional and scrutinizes the actual responsibilities of the government official in question in light of the six factors." *Tulloch v. Coughlin*, 50 F.3d 114,

---

[3] Although quasi-judicial immunity is an affirmative defense, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). "Here, the factual allegations of the complaint show that [quasi] judicial immunity applies." *Williams v. Foley*, No. 3:15-cv-1324, 2016 WL 4497746, at *8 n. 3 (D. Conn. Aug. 25, 2016).

116 (2d Cir. 1995). Thus, courts have extended quasi-judicial immunity where the individual "acts as an arm of the court and [the] task" is integral to the judicial process. *Saint-Guillen v. U.S.*, 657 F. Supp. 2d 376, 381 (E.D.N.Y. 2009)(internal quotation marks and citations omitted); *see also Garcia v. Herbert*, 2013 WL 1294412, at *2 (D. Conn. Mar. 28, 2013)(observing "clerks are immune from suit for performance of tasks which are judicial in nature and an integral part of the judicial process.").

Quasi-judicial immunity has been extended to "prosecutors, administrative law judges, [] hearing officers," *Finn*, 592 F. App'x at 19, and court-appointed mediators.[4] *See e.g.*, *Yee v. Mich. Supreme Court*, No. 118391, 2007 WL 118391, at *4 (E.D. Mich. Jan. 10, 2007)(concluding quasi-judicial immunity barred claim "against [court-appointed] Meditator/Case Evaluators…"); *Savoie v. Martin*, No. 10-0327, 2010 WL 4982543, at *6 (M.D. Tenn. Dec. 2, 2010)(citing cases recognizing federal law extended quasi-judicial immunity to court-appointed mediators); *Wagshal v. Foster*, 28 F.3d 1249, 1254 (D.C. Cir. 1994)(finding immunity for court appointed mediator); *Joynes v. Meconi*, 2006 WL 2819762, at *6 (D. Del. Sept. 30, 2006)(concluding court appointed mediator in family court was protected by quasi-judicial immunity). Quasi-judicial immunity may be lost "only if [the defendant] acts in the clear absence of all jurisdiction." *Finn*, 592 F. App'x at 19 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). But as the Second Circuit has recognized, "the scope of a judicial officer's jurisdiction must be construed broadly in order to allow her to exercise her functions

---

[4] I note that "Connecticut courts apply the same functional approach to determine whether quasi-judicial immunity attaches to state law claims." *Garcia*, 2013 WL 1294412, at *2. Using that approach, they have concluded that housing court mediators are entitled to quasi-judicial immunity. *Cayo v. O'Garro*, 2014 WL 4746616, at *7, 8 (Conn. Super. Ct. Aug. 11, 2014)(concluding that a "housing court mediator" is entitled to "the protections of quasi-judicial immunity").

with independence and without fear of consequences." *Id.* (quoting *Gross*, 585 F.3d at 85.) "Mere evidence that an official's action was in error, was done maliciously, or was in excess of her authority does not undermine her claim to [quasi-judicial] immunity so long as it did not fall clearly outside all official authority." *Id*. (quoting *Stump*, 435 U.S. at 356.) Further, claims that the defendant lied or acted in bad faith do not overcome quasi-judicial immunity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991)(Because judicial immunity "is an immunity from suit, not just ultimate assessment of damages," it is "not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."); *see Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)(extending immunity to clerks of court and noting that "several other circuits have concluded that the same policies underlying immunity for judges also justify a similar grant of immunity to clerks for performance of tasks which are judicial in nature and an integral part of the judicial process.")

In this case, quasi-judicial immunity extends to the Defendant because the actions alleged by Plaintiff fall within Defendant's official authority and because the *Cleavinger* factors are easily satisfied. Plaintiff alleges that Defendant coerced, manipulated, misled, and threatened him to secure his signature on an eviction settlement agreement. For example, he alleges that when he first met Defendant, she was "sitting behind a computer already executing a false, fabricated judge ordered stipulation agreement for Plaintiff to sign unto;" a task well within her role as a housing mediator. (ECF No. 22 at 5.) Allegedly, she falsely told Plaintiff that she was the judge's personal secretary, that the judge had spoken to her about the case, and that the judge had ordered Plaintiff to sign the stipulation. (*Id.*) Plaintiff alleges that Defendant falsely told him that "should the judge learn that you refused to sign-unto the ordered stipulation this judge will rule against you and have you evicted." (*Id.* at 7.) Plaintiff also alleges that Defendant

forcibly kept him in her office in order to coerce him into signing on to the agreement.[5] (*Id.* at 8.) Even if, as alleged, Defendant's statements were false and her actions malicious, Defendant was acting to resolve an eviction action, a function well within her official authority as a state housing mediator. Plaintiff's allegations all suggest that the alleged harm caused by Defendant arose out of her role as a housing mediator, conduct for which she is entitled to quasi-judicial immunity. Though a party may lose quasi-judicial immunity "if she acts in the clear absence of all jurisdiction," no such allegations are made here because all of Defendant's alleged actions were related to her role as a housing court mediator. And, as noted, Plaintiff's "[conclusory allegations] that [the Defendant's] action…was done maliciously, or was in excess of her authority does not undermine [Defendant's] claim to [quasi-judicial immunity]." *Finn*, 592 F. App'x at 19 (internal quotation marks, citations, and alterations omitted).

---

[5] Plaintiff alleges that Defendant "wither will hold me by my belt line or waist line or hand to prevent me from leaving her office with continued threats that I will be evicted should she report my walk-out to this intolerant, NO NONSENSE eviction court judge . . . ." (ECF No. 22 at 8.) Plaintiff raises these allegations in conjunction with his claim that the Defendant coerced and intimidated him into signing a settlement agreement, and thus, they appear to continue to frame the Defendant's actions taken in her role as a housing mediator. But to the extent that this allegation could be construed to plead a separate claim that Plaintiff was confined by Defendant against his will, that is a claim on which Defendant likely would not have quasi-judicial immunity because it is not part of a housing mediator's function to confine persons against their will. *See Mireles*, 502 U.S. at 11-12 ("First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's official capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of jurisdiction.") Such a claim, however, would not arise under federal law. It would instead likely fall under the rubric of false imprisonment, a state law tort claim. (Although the introductory paragraph of the operative complaint mentions the Fourth Amendment, the individual counts, including the Section 1983 count, do not, and Plaintiff's complaint nowhere elaborates on why the Fourth Amendment is invoked at all.) To the extent Plaintiff intends to assert a false imprisonment claim, I decline to exercise supplemental jurisdiction over it and dismiss it without prejudice. *See Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000)("Because the federal claims against [the defendants] must be dismissed, we also direct dismissal of the supplemental state law claims for false arrest, false imprisonment, and malicious prosecution, pursuant to 28 U.S.C. § 1367(c)(3).")

Regarding the *Cleavinger* factors, housing mediators are integral to the judicial process and thus entitled to quasi-judicial immunity. Created by statute to assist the Connecticut Superior Court's housing division and appointed by judges, a housing mediator's role is functionally comparable to that of a judge. Under Connecticut law, judges of the Superior Court "may appoint such housing mediators as they deem necessary for the purpose of assisting the court in the prompt and efficient hearing of housing matters . . . ." Conn. Gen. Stat. § 47a-69(a). Housing mediators perform inspections and investigations at the request of the court and exercise powers and perform duties that the judge prescribes. *Id.* § 47a-69(b). They also perform initial screenings and evaluations of matters that will ultimately be placed on the housing docket, and they recommend settlements – all functions that would otherwise be performed by a judge, *id.* § 47a-69(c), who would be afforded absolute judicial immunity. *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)("[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.") Moreover, "[m]ost (if not all) of the work performed by [] housing mediators is subject to review and final approval by…judges." *Cayo*, 2014 WL 4746616 at *8. Because they perform these adjudicative functions, the likelihood that housing mediators might be harassed or intimidated by the prospect of personal liability is sufficiently great to interfere with the performance of their official duties. Further, the fact that judges oversee housing court mediators – and have to approve any stipulated judgment the mediator may help negotiate – provides a safeguard that reduces the need for private damages actions to control unconstitutional conduct. And while housing mediators are not independent in that they are overseen by judges, their overseers are themselves insulated from political influence. Superior Court judges are appointed to eight-year terms by the Governor with the consent of the

General Assembly and cannot be removed during their terms except by impeachment or other procedures mandated by the Connecticut Constitution. Conn. Gen. Stat. Const. Art. 5, § 2. That independence likewise provides some insulation from political influence for those whom they appoint, including housing mediators. Precedent, the fifth factor, does not directly constrain housing mediators, but, again, because their work is ultimately subject to the approval of judges, who are bound by precedent, precedent provides an indirect constraint. The adversarial nature of the process also weighs in favor of extending immunity to mediators; in this case, for example, both parties were represented by counsel. The availability of appellate review is, like precedent, only an indirect constraint, but it still weighs in favor of immunity because, again, housing mediators are ultimately adjuncts of the court.

Based on the foregoing, I join other courts in finding that Defendant's role as a housing mediator places her squarely within the Second Circuit's admonition that she be allowed to "exercise her functions with independence and without fear of consequences." *Finn*, 592 F. App'x at 19. (internal quotation marks and citations omitted). Because Plaintiff's claims arise out of the performance of those functions, Plaintiff's claims against the Defendant are barred by the doctrine of quasi-judicial immunity.

## IV. Conclusion

For the reasons stated above, I grant the motion to dismiss because I find: (i) Plaintiff's claims in counts one, three, four, five, and six against Defendant in her official capacity are barred by the Eleventh Amendment, (ii) the facts alleged by Plaintiff fail to state claims as to any of the counts, and (iii) Plaintiff's claims in counts one, three, four, five and six against Defendant in her individual capacity are barred by quasi-judicial immunity.

14

IT IS SO ORDERED

                                            /s/
                                   Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
                August 9, 2017